May it please the Court, Christy Hughes from Federal Defenders of San Diego on behalf of Mr. Villavicencio. I'd like to reserve three minutes for rebuttal. Please watch your clock, and I will try as well. Your Honor's just heard from Mr. Fyfe about the warrant of deportation, so unless you have any questions for me about the warrant in this particular case, I'm going to move on to the guidelines issue of the 422. The government asks this Court to disturb the District Court's ruling that a conviction for California Penal Code 422 is not a crime of violence under the guidelines. But 422 does not have the required threat and use of physical force against a person that's required for a crime of violence under 2L1.2. We have to remember that under Leocal, Fernando's Ruiz, and now just recently from this morning, Johnson, that the force required from a crime of violence is active, intentional, violent force. And the statute, 422 by its plain terms, does not require the threat to use active, violent force against a person. The statute doesn't even require the speaker to intend to carry out the threat that he makes, and that's just not violent and active force. It does say, threatens to commit a crime which will result in death or great bodily injury. That's correct. So that seems to be at least pointing to violent force. Well, pointing to, I mean, the terms of the statute don't require it. What it requires is threaten to commit some sort of crime, which can be a crime against property. And if that crime was – I didn't understand that argument. It says that it will result in death or great bodily injury to another person. The crime. And so I didn't understand how it's a threat against property. Well, we gave – I mean, I'll point to a California case where this was played out. In Martinez, which we talk about in our briefs, there's two counts of 422, and one of those 422 convictions involves threats that he made to his girlfriend. And the threat against the girlfriend is, I'm going to blow up your house – I'm sorry, I'm going to blow up your car and I'm going to blow up your workplace. He never threatened to punch her or in any way use force against her. He threatened to use force against her car and her work. The court found that the words used and the circumstances surrounding the words strongly evince a threat to commit a crime which would result in death or great bodily injury to Ramona. So the court said it was a threat ultimately to Ramona, death or great bodily injury. But that's not what the facts – I mean, the facts that underlined that conviction were just – I mean, technically a threat to commit these two property crimes. And that's actually what the defendant did there. He stuck a burning piece of paper in her gas cap and he sprinkled some gasoline around her business. She was not present for either of those. She was nowhere near those. They were strictly property crimes. If she had been near there, she would have been – potentially it would have resulted in death or great bodily injury. But she was nowhere there. They were strictly threats to commit property crimes. Property crimes. And those were upheld. We don't know whether the threat – whether he thought she'd be there. Pardon? We don't know whether he thought she'd be there. That's true. I mean, that wasn't an issue in that case. I wonder what – okay. There's no evidence to that, then. Counsel, Judge Gould, with my question. I thought that under the statute, the threat against property was only viable for a claim if it was in circumstances that would yield bodily injury. Like, I'm going to blow up your car while you're in it or your house. Well, that wasn't the case. Is that wrong? Well, under Martinez, that wasn't the case. She wasn't in her car and she wasn't – I mean, she couldn't have been in those two places at once when he made those threats. So that wasn't central to the court's holding there. She wasn't in her car and she wasn't in the workplace. He only threatened to blow up those two pieces of property. It was central to the court's holding. I mean, the court had to conclude that the defendant clearly knew where Ramona lived and knew her habits, and then the language I previously quoted, which said the circumstances surrounding those threats to property or the threat to commit a crime were ones that indicated he intended to cause death or great bodily injury to Ramona. Well, that went partially to the threat to blow up her house because the defendant in that case had previously sprinkled gasoline around an ex-girlfriend's house. So for that particular threat against her house, they were talking about the circumstances there would have put her in great fear because she knew that he had the ability to carry out that threat. But for the car and the workplace, that wasn't necessarily the case. I mean, the circumstances really were that he had previously carried out a similar threat, and so for the house threat, she would have been potentially in fear that he could do it again, she could be there, and she would be in great bodily injury. And this, I mean, the Fifth Circuit, in addition to the district court here, the Fifth Circuit has recognized specifically for 422 that it can be carried out without necessarily threatening to harm a person, which is required under 201.2. And again, that is what happened in Martinez. I'd like to move on to the deportation unless the court has further questions about 422. The government relied in the 1326 prosecution on a deportation proceeding as an element of the 1326, but that deportation proceeding was fundamentally unfair. First of all, Mr. Vivicencio was prejudiced because he was removed when he should not have been. He was removed on two invalid grounds, which I'll argue in a bit were just not grounds of removability. But he was charged in the notice to appear only with those two grounds of removability. Well, Congress set out in 1326d what were the bases for a collateral attack on the deportation proceeding. So maybe you could walk through, particularly 1326d.1, why is it that Vivicencio either exhausted his administrative remedies or how we analyze a waiver or ineffective assistance of counsel under that circumstance? Well, here he didn't appeal the immigration judge's removal order, but he's excused from exhausting those administrative remedies. At the immigration hearing, his immigration counsel twice on the record says, I'd like to reserve appeal. She even notes to the court that there's an issue with the 422 that he had moved to withdraw his plea, and so she's going to go back and look at that as one of the bases for her appeal. So there was nothing wrong with the proceeding before the immigration judge. The immigration judge clarifies that there's a right to appeal, and in fact his attorney reserves the right to appeal. So it doesn't seem to fall within the waiver cases that we have. Well, it does in the sense that Ubaldo Figueroa says the alien himself has to do something. He has to take an affirmative act to waive his right to appeal. But he didn't waive his right to appeal. In fact, his attorney specifically reserved that right. His counsel, through her ineffective assistance, just completely abandoned the appeal. He stated in his motion. How do we know that? How do we know the counsel reserved the right to appeal? But how do we know on a direct appeal of this violation that counsel dropped the ball as opposed to counsel analyzed an appeal and decided there wasn't a good appeal? How do we know that? Did you submit evidence in the district court that would show ineffective assistance through an expert? Well, I have two responses to that, Your Honor. First of all, no, there wasn't a declaration submitted, but there was in his motion to dismiss the indictment based on the invalid deportation. Mr. Villavicencio alleged that as far as he knew, his counsel was following through on that reservation of appeal and filing an appeal on his behalf. There was nothing as far as he knew. I mean, he never said we had discussions where I told her it was okay, don't file it. As far as he knew, that appeal was going to be filed, and the government never contested that assertion in his motion. But second of all, the filing of the declaration really goes to the Lozada requirements, which are specific to a motion to reopen where there's going to be a finding of ineffective assistance of counsel. Here we're not asking for any type of formal finding of ineffective assistance. We're just pointing to his counsel's ineffective assistance to point out why he should be excused from exhausting his administrative remedies. He never took any affirmative steps to waive or abandon his appeal. This was just a failure to act on the part of his counsel. And this Court's cases on waivers say that a defendant himself or an alien himself has to take affirmative steps to waive that appeal. It's not enough for counsel to do something like that. But as Judge Aikuda said, he didn't waive his appeal. His appeal was reserved. The problem was his lawyer just didn't file it after that. But there's no showing that he made a waiver that was unintelligent. Well, the showing is that through his counsel, he reserved appeal. And then counsel, again, while noting that there was a – she thought it was a valid ground for appeal, and he assumed she's going to file it. She's my lawyer. She reserved it. We're going forward. Again, that's what he stated in his motion. To the best of his knowledge, he thought she was going to go forward. He never did anything. He never made any sort of intelligent or voluntary waiver. His counsel just failed to do anything. So it was a passive act. But how can we deal with a claim of ineffective assistance when there's no expert testimony of some lawyer saying he should have appealed or he has not – we have no record of what the lawyer would say, right? In other words, we don't know what this lawyer would say as to why he didn't appeal. Because there's no declaration from counsel or anything. Is that what Your Honor is saying? Right. Is that right? Yeah. So, I mean, is it possible that just as the general rule is we don't look at IAC on direct appeal, that here this record isn't suitable for it, it's not adequate, and that the IAC claim would have to be disregarded, and that would have to be raised by habeas? Well, I think the record – I mean, certainly Your Honor is correct. It's not the strongest record for this. But we do have counsel twice raising appeal before the immigration judge. And we have the defendant saying, I thought she was appealing on my behalf. I mean, we don't have any statements from him saying, yes, I waived it. I understand that there might be an issue on the 422 and my withdrawal of the plea, but I'm going to waive it and just move forward. I mean, we don't have anything there. We just have an absolutely abandonment of the appeal by counsel. Well, the 422 – I mean, the district court at that point said that the 422 was not a crime of violence, right, so that the district court's determination was in favor of your – Before the immigration judge, the immigration judge ruled that it was an aggravated felony at the deportation hearing. And later on for the sentencing issue, the district court ruled that it was an aggravated felony, not a crime of violence. Is that what Your Honor is asking? Well, I mean, what we know is that at the immigration hearing, the lawyer did what was appropriate, reserved the appeal, didn't waive it. And the Lozada requirements, putting aside the technical issue, was the BIA's way of saying, here's some evidence that we could look at to indicate that there was ineffectiveness here. And I think what I hear Judge Gould saying is, here we have none other than the fact that no appeal was filed. And so I guess the question for you is, is the fact that no appeal was filed enough to say there was either ineffective assistance of counsel, there was no waiver, or that we don't look at 132060? I don't know, but that seems to be the only real piece of evidence in the record. So does that carry your argument? Is that enough? I think, I mean, there's a very strong presumption against waiver. So I think that here, where, again, you know, as I stated, it's not the strongest record ever for waiver. But we do have these two pieces of evidence where she reserves appeal and he says, I thought she was filing one. And so where there is a strong presumption against waiver, I think the court should look at this and say, there was absolutely nothing done on the defendant's part to waive. It was all just this totally passive act in not filing an appeal after she reserved it. And so with that strong presumption and, you know, Lozada, if the IAC works to prevent an appeal, then those Lozada requirements are not strictly enforced. And so we don't have to have a declaration necessarily, as Judge Gould was saying. You can look at the facts that you do have in the record. And coupled with the strong presumption against waiver, I think that there's enough for the court here to say that counsel's actions in abandoning the appeal were not enough to waive it for Mr. Villavicencio. Do you want to? Yeah, my minute and 18 seconds. Thank you. Good afternoon. May it please the Court. Mark Rahy for the United States. I'd like to pick up on the issue that we were last discussing as far as exhaustion. In this case, there is zero evidence of ineffective assistance in the record. There was no affidavit. And whether or not you want to apply Lozada strictly, substantially, leniently, this record has absolutely zero evidence. And I disagree with counsel's statement. She's referring to a single, bare assertion made by an attorney in a motion. That's not competent evidence by anybody's definition, let alone the federal rules of evidence. Evidence of what? What's this bare statement you're talking about? Well, I believe she's saying, and it was quoted in the brief, that in the motion to dismiss in the district court, the defense wrote, Mr. Villavicencio Burrell was under an impression that his attorney would follow through with the appeal. That's the bare assertion of counsel. There is no affidavit. I just wondered what you're referring to. Okay. But in this case, to be honest, I think it's important to keep in mind, we raised points in our briefing that were never really contested by the defense. This isn't even so much a case, it's the defense burden to prove ineffective assistance. And as this Court has already picked up on, I think there's sort of an analytical split here. The defense keeps invoking waiver cases. This was not an affirmative waiver. That, it seems, is clear now. This judge or this lawyer reserved the right to appeal. But we know, even though it's not our burden to prove ineffectiveness, we can show you as a matter of law that this attorney was not ineffective for a couple main points. First of all, in Rosales, Rosales v. Ashcroft in 2003, this Court had already held that a 422 conviction is an aggravated felony. And, Judge Ikuti, you had referenced something that the district court said. The district court never disputed that. Because the question when it's sentencing is whether it's a plus 16 or plus 18. The plus 16 definition of crime of violence is different than the aggravated felony definition. But the district court, whatever she wanted to say, couldn't disregard this Court's controlling authority in Rosales, Rosales. And it also is worth noting that at sentencing, the defense were the one that said, in resisting the plus 16, they said, oh, no, it should just be a plus 8. They conceded the applicability. So what does that tell us? At the time of this removal hearing, this alien had an aggravated felony. It's a categorical matter under 422, statutorily ineligible for not just one, two, or three forms of relief, but any relief. That's what any competent attorney would have known at the time. Secondly, as we also point out in our papers, aside from that, the only attack that this defendant makes on this appeal or on this removal now is that the twin charges of removability weren't proper, i.e., he was not removable as charged. And yet every single authority he relies on postdated this alien's removal hearing. And the cases are legion from this circuit that an attorney, as a matter of law, cannot be deemed ineffective for failing to predict changes in the law. But the ineffectiveness is that there was no appeal. So if we say Mr. Villavicencio instructed or directed the attorney to take an appeal and the attorney, as we see in so many cases, said, yes, I'm taking care of it, don't worry, and then dropped the ball, I mean, arguably you're in the immigration context, we would say that deprived the petitioner of the right to get a hearing and to get review of his case. And under those situations, doesn't Endoza-Lopez tell us he's entitled to some sort of review of his deportation proceeding? I disagree, Your Honor, and this is why I'll say it. And, in fact, I'm glad you brought this up because this was the last point I was going to make here. The defense-owned authority, they cite a case, Ray v. Gonzales. It states that to make a due process violation based on a claim of ineffective assistance, you can't just have the, it basically traps Strickland, the two parts. You can't just allege ineffectiveness. You have to show prejudice. Now, granted, defense hasn't even raised this argument, even though it's in their own authority. Ray v. Gonzales cites another case, Derringer v. Reno, that says, when an alien is deprived of an appeal altogether, a presumption of prejudice arises. However, this court has then gone on to say, in fact, in the case of Rojas Garcia v. Ashcroft, 339F30, page 826, that that presumption is rebutted where there are no discretionary grounds for relief. So even in the immigration context, and this just accords with common sense, I mean, are we going to elevate form over function to a point that's ridiculous? If an alien has absolutely zero chance at discretionary relief, which she cannot rebut, based on Rosales v. Ashcroft, then under even those decisions, and the ones that I believe those are the ones Your Honor is referring to, there is no prejudice as a matter of law. And if there is no prejudice as a matter of law, there is no ineffective assistance of counsel as a matter of law. So whether or not putting aside the paltry factual record that was raised below on this issue, if this court wants the easiest way, the most direct way to dispose of the direct appeal, it's on this exhaustion grounds. Because as Judge Acuda pointed out, this isn't even just a judicial common law gloss, this is a statutory requirement at 8 U.S.C. 1326 D1. And the last thing I'll say about the exhaustion, two or three of the authorities, and this supports my point, that the defense cites, they cite a Second Circuit case called Perez, they cite a District Virgin Islands case called Dorset. In both of those cases, unlike here, the aliens did not have categorical aggravated felonies. And in fact, in both of those cases, 212C was at issue. The court in both cases said each alien could have made a strong showing under 212C. And therefore, prejudice was found, and that's why ineffective assistance of counsel excused the exhaustion requirement there. Again, that situation could not contrast more sharply with that here, where I'm not just saying that this court's already said in Rosales-Rosales in 2003 that Cal Penal Code 422 is a categorical aggravated felony. Counsel, I have a question for you. Okay. If I may, what is the relationship between the provision of the statute requiring exhaustion, I guess the D1 provision, and cases like Mendoza that give a due process right? In other words, can this challenge be made absent, compliance with the statute based on precedent like Mendoza? Well, if I understand your honor correctly, I don't believe so, because 1326D was enacted by Congress in response to Mendoza-Lopez to basically codify what it held. And it's not like the interpretation I'm making on the record of this case will lead to some wholesale deprivation of collateral review of underlying removals in later cases. As this court is surely well aware over the years, these motions are legion. These appeals are equally numerous. But in this case, even giving the defendant the benefit of the doubt, he can't even show it. I mean, if we can show as a matter of law that his lawyer was not ineffective for pursuing an appeal, that should end the inquiry. And especially since this is a collateral context to begin with based on events years ago, it shouldn't be that this court bends over backwards to accord aliens every single possibility when the law is clear and the statute is clear, they have to exhaust and they can't do so on this record. So unless there are more questions on exhaustion, I'll move on to other topics. One thing I wanted to say before I forgot, and again, my colleague in the last case, Mr. Gardner, I think he handled the warrant of removal issue very well. I would only add one thing, and this was in direct response. I know Judge Gould had asked whether any circuits had adopted the primary purpose test. And as far as I know, for sure the 11th Circuit has. And the case decided a month ago, United States v. Caraballo. It's cited in the government's February 18, 2010, Rule 28J letter. But even aside from that, if that case had never been decided, the Supreme Court has held as much. And that's the Davis v. Washington case that defense counsel in the prior case also referred to. And that's 547 U.S. 813 at page 822. And the facts of that case provide a beautiful example. That was a 911 call. And what the Supreme Court held, building and clarifying on Crawford, was the primary purpose of that call was to seek assistance. And it was only a secondary use of it as evidence in a criminal trial. So that's the Supreme Court itself basically enshrining that test. And I don't think there's any way that the defense can rebut that with the warrant of removal. Because the primary purpose at the time it's made is strictly administrative. The government has a paramount interest in documenting the movement of aliens. Even if an alien never comes back to this country again, that document has a central purpose of proving that he's not here. But as Mr. Gardner pointed out too, if he does happen to come back, the primary use of it will be in administrative proceedings. But again, I don't want to belabor the point, but if you want a primary purpose test, you have Davis and you have the 11th Circuit and Caraballo. And then the last thing I guess I'll reach is the Penal Code 422, whether that's a plus 16. And again, the test is slightly different here than the aggravated felony definition. But as we pointed out, one prior panel of this court in the Macias-Fuentes case has already squarely rejected this argument. And yes, it's unpublished, but it's post-2007 and it has reasoned analysis. So this court, there's no reason to create an inter-circuit conflict where none is present. But more importantly, the plain language, what is this statute? It's criminal threat, the threat to create a crime that will result in either death or great bodily injury. Both of these things, it's kind of hard to see how this doesn't become a categorical crime of violence. And even before addressing defense counsel's arguments, the most important point I would note, in our briefing, we cited a case from this circuit, De La Fuente. At 353 F3rd at page 770, this court laid out the following rule. Any statute that requires creation of a fear of unlawful injury to another includes the element of a threatened use of physical force against another as a matter of law. And this wasn't just a case out of left field that stands on its own. It cited other cases, Saron Sanchez, 222 F3rd at 1173, David H., 29 F3rd at 494, where other statutes were held to satisfy this definition of crime of violence. That is exactly what this statute requires by its own plain terms. I mean, it's not just any injury, it's great bodily injury or death, the supreme injury. And there's been absolutely no effort to rebut that authority by the defense. I'd also point out Judge Gould authored an opinion cited in our papers, United States v. Ladwig, where you held that a Washington telephone harassment statute satisfied the categorical definition of a violent felony under the Armed Career Criminals Act, even though it didn't expressly require a threatened use of force where it required a threat to kill. That's in paramateria with the statute we have here. And, in fact, the direct quote at 432 F3rd at page 1004 was that because this statute requires, quote, a threat to kill, the minimum elements of the statutory provision necessarily include the threatened use of violence. What do you do with the case that your opponent cited about the fellow who writes the workplace notifier? Absolutely, Your Honor. In 20 years of this statute being on the books, that's the only case that the defense points out. And they don't quibble with the law, they simply quibble with the facts. That was the sufficiency of the evidence case. But as we point out in our papers, and I'll reiterate here, even now they're not getting the facts right. There were two victims in that case. One of them, about the threat to blow up the workplace, applied only to the boss, the boss of the defendant's estranged girlfriend. He made that threat immediately after getting in the man's face in a heated argument and saying, I'll get you. And what the record shows was he did set a fire, I believe it was at 445 in the morning on the day in question, and it was maybe five minutes either before or after that supervisor actually reported to work. So that is the kind of case, as we try to make a point, if I really had to kind of reduce this statute, if I threatened to blow up your mailbox, not in the statute. If I threatened to blow up your home, it is. If I threatened to blow up your home while you're in Lake Tahoe on vacation a thousand miles away, not included. If I threatened to blow up your home when the record suggests that I know you are there, it is included. And that's exactly what Martinez held. So as far as the boss, that was the threat to blow up the workplace. Now, as far as the estranged girlfriend, there were two threats made. One to blow up her car, one to blow up her house. I think it's important, this court, if you're really going to get hung up on this one case in 20 years, look at the very last paragraph of the opinion in Martinez. In affirming the conviction as to the estranged girlfriend, the court only makes passing reference to the threat to the car and in the context of evaluating the complaining witness's credibility. What they centered the conviction on is the threat to blow up the home. Only after pointing out, as Judge Ikuda pointed out, that it wasn't just in a vacuum that the defendant made that threat. It was after he made, he was in a heated argument with the defendant or with the victim, after he physically hit her and after pointing out that that victim had been present when he did this to the last girlfriend, when he went to her house, poured gasoline around it. And that's why they said he clearly knew where Ramona lived and knew her habits. The words used in the circumstances surrounding the words, strongly evince a threat to commit a crime which would result in death or great bodily injury to Ramona. This wasn't about, oh, I'm going to blow up Ramona's property that's located 100 miles away. It was a threat that was only sustained because the circumstances necessarily implied a threat to her person. And as we pointed out in our brief, the California State Legislature, when it wants to, knows how to criminalize threats to property. And that's Cal Penal Code, I believe it's 71 and 140. It doesn't do so here. We cite the other cases when state defendants take 422 convictions up on sufficiency, what do they usually argue? Oh, I only meant to hurt property. That's their claim. And when those convictions are affirmed, this California Court of Appeal is saying, no, based on the record, you necessarily threatened somebody else. So I see, actually, I appreciate the court's indulgence. I've exceeded my time. If you have any other questions, I'm happy to answer them. Otherwise, the government would submit. Thank you. So in my 78 seconds, I'll just talk about two points that Mr. Rahe raised that I didn't have a chance to address. The first is the warrant issue and the primary purpose. And, again, I think this was adequately covered. But in Davis, yes, one of those 911 calls, the primary purpose was to give testimony about something that had previously happened. Primary purpose is just one way to satisfy and a clear way to satisfy that objective standard in Melendez-Diaz, but it's not the only way. But the call that was asking for assistance was determined not to be testimonial. And, again, that was one way is looking at the purpose of the call. That's one way. But the standard now in Melendez-Diaz is this objective standard. So we can look at the purposes of those 911 calls, and that's a way to satisfy the objective standard. But, again, it's not the only way. But isn't emergency request for help when people have been murdered or there's an emergency and you call the police? Wouldn't it be possible that that language would be used in a court proceeding? So are you suggesting that Melendez-Diaz overruled that determination in Davis? Not overruled. I mean, I don't think that they're inconsistent. I think that looking at the purpose of the 911 call or the document, if you determine that the primary purpose of that document or that phone call is to give testimony that would be later used in litigation, that's one way to clearly satisfy this objective standard. If there's other purposes, then you can look to this objective standard, the circumstances that the statement was made or the document was created, and we look and see the reasonable person test that was previously articulated. The second point is relating to the 422, the Macias-Fuentes unpublished decision and the De La Fuente case. Those, I don't think they square with Leocal. First of all, De La Fuente is pre-Leocal, pre-Fernandez-Ruiz, and, again, pre-Johnson, where the court is saying we're going to give someone a significant sentence enhancement. We want to be sure that this was active violent force, and the court just reiterated that with a passage in Johnson this morning. Macias-Fuentes, there actually is no reasoned opinion there. It's a brief paragraph. There's no citations to Leocal, Fernandez-Ruiz. It's just conclusory statements, and that's it. There was no oral argument, and it's unpublished. I mean, there's really no reasoning for this court to rely on. So with that, I would submit thank you. All right. The case of the United States v. Vicencio Bruel is submitted, and we're adjourned for today. All rise. Court will begin in ten minutes. Kelly? Hey, Several, where's Kelly? Somebody's supposed to put that on mute. Is Kelly here? No.
judges: Canby, Gould, Ikuta